IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

RONALD MCDONALD HOUSE          *
CHARITIES, INC.,
                               *
     Plaintiff,
                               *
vs.                                      CASE NO. 4:22-cv-207 (CDL)
                               *
RONALD MCDONALD HOUSE CHARITIES
OF WEST GEORGIA, INC.,         *

     Defendant.                *
_____

O R D E R

McDonald's Corporation, the owner of intellectual property
that includes "the golden arches," "the Big Mac," and "Ronald
McDonald," entered a license agreement with Ronald McDonald House
Charities of West Georgia ("RMHC West Georgia"), an independent
charitable organization in Columbus, Georgia, which allowed RMHC
West Georgia to use McDonald's' trademarks to raise funds to be
used for temporarily housing sick children and their families while
the children received medical treatment at local hospitals.  These
facilities were universally known as "Ronald McDonald Houses."
Through the years, RMHC West Georgia raised substantial funds that
were used to build and operate a Ronald McDonald House in Columbus.
McDonald's subsequently assigned the license agreement to an
affiliated charitable organization, Ronald McDonald House
Charities, Inc. ("RMHC Global"), without first obtaining RMHC West

Georgia's consent to the assignment.  After this assignment, RMHC West Georgia continued to use McDonald's trademarks to raise funds for the Columbus Ronald McDonald House.  When disputes arose regarding the operation of the Columbus Ronald McDonald House, RHMC Global terminated the license agreement with RMHC West Georgia.  RMHC Global alleges that at the time of the termination, RMHC West Georgia owned substantial assets that had been accumulated through fundraising using the McDonald's trademarks, including the Columbus Ronald McDonald House, marketable securities, and cash.  It seeks a declaration from this Court that those assets can only be used for "Ronald McDonald House" purposes consistent with the original license agreement.

RMHC West Georgia moves to dismiss, claiming that RHMC Global has no standing to bring this action because it is not a party to the original license agreement and RMHC West Georgia did not consent to the assignment of the license to it.  In the alternative, RMHC West Georgia argues that it is no longer bound by the license agreement's restriction on the use of funds because the agreement has been terminated.  For the reasons that follow, the Court denies the motion to dismiss (ECF No. 16).

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.   In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556.   But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

## FACTUAL ALLEGATIONS

RMHC Global alleges the following facts in support of its claims.   The Court must accept these allegations as true for purposes of the pending motion.

RMHC Global is a global charitable organization whose mission is to create, find, and support programs that directly improve the health and well-being of children and their families.   Am. Compl. ¶ 6, ECF No. 13.   RMHC Global accomplishes this mission through local Ronald McDonald House programs, which provide parents far from home a place to stay while their children are hospitalized. *Id.*   RMHC West Georgia operated the local Ronald McDonald House in Columbus, Georgia.   *Id.* ¶ 9.

In 1993, RMHC West Georgia entered a license agreement with McDonald's Corporation and began operating a Ronald McDonald House in Columbus, Georgia. *Id.* That license agreement gave RMHC West Georgia the right to use Ronald McDonald trademarks at the Columbus Ronald McDonald House. *Id.* ¶ 15. Since that contractual relationship began, RMHC West Georgia has raised over $3.9 million in funds and assets "in the name of and being identified for" Ronald McDonald House in Columbus. *Id.* ¶ 19.

As part of an effort to update its license agreements with Ronald McDonald House chapters throughout the United States, McDonald's proposed an updated license agreement to RMHC West Georgia. *Id.* ¶ 11. RMHC West Georgia did not sign the updated license agreement. *Id.* McDonald's subsequently assigned its rights under the original license agreement to RMHC Global. *Id.* ¶ 12. As a result of various disagreements, operational problems within RMHC West Georgia's organization, and a threat from RMHC West Georgia to transfer funds raised using the Ronald McDonald trademarks, RHMC Global terminated the license agreement with RMHC West Georgia. *Id.* ¶¶ 32, 35, 41. In its termination letter, RMHC Global reminded RMHC West Georgia that any funds RMHC West Georgia "raised in the name of, and identified as being for, Ronald McDonald House must be used only for the House." *Id.* ¶ 43. RMHC West Georgia did not respond to that letter. *Id.* ¶ 44. After repeated failed attempts to confirm that RMHC West Georgia would

not transfer the funds, RMHC Global filed this action seeking a declaration that any funds raised by RMHC West Georgia under the Ronald McDonald trademark may be used only for the Ronald McDonald House in Columbus, Georgia.  *Id.* ¶¶ 45–53, 61.

## DISCUSSION

The pending motion to dismiss raises two main issues.  First, was McDonald's' assignment of the license agreement to RMHC Global valid?  Second, assuming the assignment of the license agreement was valid, did the license agreement's restriction on RMHC West Georgia's use of funds raised "in the name of" and "identified as being for" Ronald McDonald House continue post-termination?  The Court addresses each issue in turn.

## I.  Was McDonald's' Assignment of the License Agreement to RMHC Global Valid?

RMHC West Georgia argues that because it never consented to McDonald's' assignment of the license agreement to RMHC Global, RMHC Global lacks standing to sue for enforcement of the license agreement.  RMHC West Georgia's argument depends on whether the license agreement is "personal" to both parties under Illinois law.[1]

Under Illinois law, a contract that is "personal" to a particular party cannot be assigned without the other parties'

---

[1] The parties agree that Illinois law governs pursuant to the terms of the license agreement.  Am. Compl. Ex. A, License Agreement ¶ 13, ECF No. 13-1.

consent. *Martin v. City of O'Fallon*, 670 N.E.2d 1238, 1241 (Ill. App. Ct. 1996). A contract is "personal" if the "personal qualities of either party are material to the contract." *Id.* RMHC West Georgia argues that the express language of the license agreement demonstrates the parties' intent to personalize the contract to both parties. The license agreement's assignment provision provides:

> This License and all rights and duties hereunder are *personal* to [RMHC West Georgia] and shall not (without the prior written consent of McDonald's), be assigned, sublicensed or otherwise encumbered by [RMHC West Georgia] or by operation of law. In the event of any assignment or encumbrance by operation of law, this License shall immediately terminate.

Am. Compl. Ex. A, License Agreement ¶ 12, ECF No. 13-1 at 5 (emphasis added). RMHC Global contends that the word "personal" demonstrates that McDonald's—as licensor—intended to grant the license only to RMHC West Georgia and restrict the license's transferability. In other words, it maintains the license was "personal" only as to RMHC West Georgia, meaning that RMHC West Georgia could not assign the license contract to anyone else, while McDonald's was not restricted from transferring the license.

To determine whether the parties intended for the contract to be personal as to both parties, the Court must interpret the contract's language. The primary objective when interpreting a contract is to effectuate the parties' intent. *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011). To determine the parties' intent,

the Court begins with the language of the contract itself.  *Id.*
The contract "must be construed as a whole, viewing each provision
in light of the other provisions."  *Id.*  The parties' intent "is
not determined by viewing a provision in isolation."  *Id.*

The Court finds that the word "personal" demonstrates the
parties' intent to limit only *RMHC West Georgia's* ability to
transfer the license to other entities.  RMHC West Georgia's
isolated interpretation of the word "personal" contradicts both
the text of the assignment provision and the license agreement's
surrounding provisions.  The assignment provision specifically
requires RMHC West Georgia to obtain the express consent of
McDonald's before assigning or otherwise encumbering the license.
It does not say that McDonald's must obtain RMHC West Georgia's
consent before any assignment.

The terms and conditions in the surrounding provisions of the
license agreement confirm this interpretation.  *See* License
Agreement ¶¶ 1-13.  RMHC West Georgia does not dispute that nearly
all those provisions either impose obligations on *RMHC West Georgia*
or grant rights to *McDonald's*.  *See, e.g.*, *id.* ¶¶ 2, 7-9, 11
(imposing obligations on RMHC West Georgia); *id.* ¶ 3 (granting
McDonald's the right to terminate the agreement at its discretion).
And when the license agreement imposes an obligation on McDonald's,
it says so.  For example, the indemnity provision requires RMHC
West Georgia to indemnify McDonald's in some circumstances and

obliges McDonald's to indemnify RMHC West Georgia in others.  *See id.* ¶ 10.   Reading the word "personal" as broadly imposing an obligation on McDonald's to obtain RMHC West Georgia's consent before assigning a license to its own intellectual property disregards the larger context of the license agreement.  Therefore, the Court finds that the license agreement is not a "personal contract" as to both parties under Illinois law and that RMHC West Georgia's consent to McDonald's' assignment was not required. Accordingly, McDonald's' assignment of the license agreement to RMHC Global was valid and RMHC Global has standing to sue.

## II.  Did the Use of Funds Provision Survive Termination of the Agreement?

Under the license agreement's Use of Funds provision, "All funds raised in the name of, and identified as being for, Ronald McDonald House must be used only for the House. Funds raised in the name of the general not-for-profit corporation may be used by it for any purpose (i.e., either for the House or for other projects)."  License Agreement Schedule B, ECF No. 13-1 at 11. The Amended Complaint alleges that RMHC West Georgia holds approximately $3.9 million in funds and assets that it raised "in the name of" and "identified as being for" the Ronald McDonald House in Columbus.  Am. Compl. ¶¶ 18-19.  That includes over $200,000 in cash designated for "specific use" by the donor, $2.2 million in investable securities, and a house and land worth $1.3

million—all allegedly obtained by virtue of RMHC West Georgia's license to use the Ronald McDonald trademarks while the license agreement was still in effect. *Id.* ¶¶ 19, 36, 57. RMHC West Georgia argues that it is no longer obliged to follow the Use of Funds provision with respect to these funds because the license agreement was terminated. The Court disagrees.

Courts interpreting Illinois law have enforced terms of license agreements that must endure post-termination to effectuate the parties' intent. For example, in *Miller UK Ltd. v. Caterpillar Inc.*, a licensee argued that it was no longer bound by a use restriction on the licensor's confidential information because the parties had terminated the license agreement. No. 10-cv-03770, 2015 WL 6407223, at *2 (N.D. Ill. Oct. 21, 2015). The court disagreed, reasoning that because the agreement clearly reflected the parties' intent to prevent unlimited use of the licensor's confidential information, the use restrictions could "only be given full effect" if they survived the agreement's termination. *Id.* Accordingly, the court concluded that the licensee was still bound by the use restriction post-termination. *Id.* Similarly, in *CustomGuide v. CareerBuilder, LLC*, a court read a promise not to use licensed materials "in a manner inconsistent" with the terms of the license agreement as including a promise not to use the materials after termination of the agreement. No. 11-C-945, 2011 WL 5822417, at *3 (N.D. Ill. Nov. 15, 2011).

The Court finds that the Use of Funds provision must survive termination of the license agreement to effectuate the agreement's stated purpose.  Concluding otherwise would produce a result inconsistent with the agreement's plain language.  Specifically, the License Agreement states that "no license is granted" for use of the Ronald McDonald trademarks other than "in connection with the ownership, operation and maintenance of temporary housing for seriously ill children and their families" while the children receive treatment at a hospital nearby.  License Agreement ¶ 4. Further, Schedule B of the agreement—which RMHC West Georgia agreed to follow—states that the trademarks could "only be used in compliance with [the agreement] and not for purposes not directly related to the operation of the House."  License Agreement Schedule B, ECF No. 13-1 at 11; *see also* License Agreement ¶ 5 (stating that RMHC West Georgia agreed to operate the Ronald McDonald House "in a manner consistent" with the standards set forth in Schedule B).  These provisions—taken together with the restrictive nature of the Use of Funds provision—demonstrate the parties' intent to limit the scope of the license (and the fruits thereof).  Declining to give effect post-termination to the restriction on the use of funds raised using the Ronald McDonald trademarks would contradict this limited scope.  Accordingly, the Court concludes that the Use of Funds provision remains effective despite the license

agreement's termination.   Therefore, the motion to dismiss is denied on this ground.

## CONCLUSION

Having found that McDonald's' assignment of the license agreement to RMHC Global was valid and that the Use of Funds provision remains effective post-termination, the Court denies RMHC West Georgia's motion to dismiss (ECF No. 16).


IT IS SO ORDERED, this 27th day of June, 2023.

S/Clay D. Land
_____
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
